# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1681

_____

Edward Huyer; Connie Huyer; Carlos Castro; Hazel P. Navas

*Plaintiffs - Appellees*

Wells Fargo & Company; Wells Fargo Bank, N.A.

*Defendants - Appellees*

v.

Steven Buckley

*Movant - Appellant*

_____

No. 16-1740

_____

Edward Huyer; Connie Huyer; Carlos Castro; Hazel P. Navas

*Plaintiffs - Appellees*

Wells Fargo & Company; Wells Fargo Bank, N.A.

*Defendants - Appellees*

v.

Jennifer Deachin

*Movant - Appellant*

_____

No. 16-1743
_____

Edward Huyer; Connie Huyer; Carlos Castro; Hazel P. Navas

*Plaintiffs - Appellees*

Wells Fargo & Company; Wells Fargo Bank, N.A.

*Defendants - Appellees*

v.

Julius Dunmore, Jr.

*Movant - Appellant*
_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 10, 2017
Filed: Feburary 16, 2017
_____

Before SMITH, GRUENDER, and SHEPHERD, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Steven Buckley, Jennifer Deachin, and Julius Dunmore, Jr., (collectively "objectors") appeal the district court's[1] order awarding attorneys' fees in the amount of one-third of the total settlement fund in a class action settlement. Because the court's choice to calculate attorneys' fees based on the total settlement fund rather than the net settlement fund did not result in an unreasonable award, we affirm.

I.

In 2008, plaintiffs filed this class action against Wells Fargo & Co. and Wells Fargo Bank, N.A. ("Wells Fargo"). The plaintiffs' claims related to Wells Fargo's practice of automatically ordering and charging fees for property inspections when customers fell behind on their mortgage payments. Over the course of seven years, the parties engaged in extensive motion practice and substantial discovery.

In 2015, the parties participated in mediation and reached a settlement agreement. The settlement agreement provides that Wells Fargo will pay $25,750,000 in full settlement of all class claims ("total settlement fund"). This amount includes $3,250,000 intended to cover the costs of providing notice and administering the settlement. If the costs of notice and administration exceed $3,250,000, any additional costs will be deducted from the $22,500,000 available to pay class members ("net settlement fund"). If, however, those costs do not reach $3,250,000, any remaining funds will be available to distribute to class members.

The district court preliminarily approved the settlement agreement, and more than 2.7 million notices were sent to class members. Class counsel also requested attorneys' fees in the amount of one-third of the total settlement fund. Each of the three objectors filed written objections to the amount of attorney's fees. Buckley

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

argued that notice and administration costs did not represent a benefit to the class members, and thus the court should calculate attorneys' fees based only on the net settlement fund rather than the total settlement fund. Deachin and Dunmore argued that the amount of attorneys' fees requested was unreasonable.

After holding a fairness hearing, the court granted final approval of the class action settlement and awarded class counsel $8,583,332.48 in attorneys' fees to be paid out of the total settlement fund. This award represents one-third of the total settlement fund. The objectors now appeal this award.

II.

"Decisions of the district court regarding attorney fees in a class action settlement will generally be set aside only upon a showing that the action amounted to an abuse of discretion." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999). "Courts utilize two main approaches to analyzing a request for attorney fees." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244-45. "It is within the discretion of the district court to choose which method to apply." *Id.* at 246. Here, the court chose to apply the percentage-of-the-benefit approach and to award one-third of the total settlement fund.

The objectors concede that the district court's choice of a percentage should be reviewed under an abuse-of-discretion standard. Nevertheless, they contend that the court's decision to apply that percentage to the total settlement fund rather than

-4-

the net settlement fund constitutes legal error because the total settlement fund includes administrative costs, which do not constitute a benefit to the class. We disagree.

We have recently addressed this exact issue and concluded that a district court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount." *In re: Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, --- F.3d ---, No. 15-3976, slip op. at 6 (8th Cir. Feb. 2, 2017). Although we acknowledged that "[t]he Seventh Circuit has indicated that district courts should scrutinize administrative costs to determine whether they really confer a benefit on the class," *id.* (citing *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)), we agreed with the reasoning of the Ninth Circuit that "where the defendant pays the justifiable cost of notice to the class[,] . . . it is reasonable (although certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees," *id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)). Thus, we reviewed the district court's decision to include administrative costs in its calculation of attorneys' fees for abuse of discretion, and we held that the court did not abuse its discretion because the appellant made "no showing that the administrative costs were unjustifiable." *Id.*

Here, the objectors likewise have failed to show that the administrative costs are unjustifiable. In fact, if the costs of notice and administration do not reach $3,250,000, any remaining funds will be available for distribution to class members. Thus, the district court did not abuse its discretion by basing its fee award on the total settlement fund, which included administrative costs.[2]

---

[2]We note that the district court did not expressly discuss why it chose to base attorneys' fees on the total settlement fund rather than the net settlement fund. However, we do not believe that this omission suggests that the court failed to

Furthermore, the district court did not abuse its discretion in approving the total amount of attorneys' fees. Indeed, as the Ninth Circuit has noted, "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). Accordingly, we review the amount of attorneys' fees for reasonableness. Here, the court approved an award in the amount of one-third of the total settlement fund. This amount was reasonable for three reasons.

First, the district court did not err in concluding that the circumstances of this case justified a large award. The court determined that five factors were relevant: "(1) the time and work required; (2) the preclusion of other employment by the attorney due to acceptance of this case; (3) the contingent nature of the fee; (4) the results obtained; and (5) the experience, reputation, and ability of the attorneys." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628-29 (S.D. Iowa 2016) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)). In evaluating these factors, the court noted that "[t]his case has been ongoing since 2008 and has included extensive motion practice, discovery, and settlement negotiations. Furthermore, all of the attorneys worked on a contingent basis, and most attorneys retained on behalf of the class have relevant experience in class action litigation." *Id.* at 629. We find no error in the court's analysis.

Second, under the percentage-of-the-benefit method, the award was in line with other awards in the Eighth Circuit. Indeed, courts have frequently awarded attorneys' fees ranging up to 36% in class actions. *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d

consider this issue. In fact, class counsel discussed Buckley's objection in their reply brief in support of their motion for attorneys' fees, and the court noted that it had reviewed both the reply brief and all objections. *Cf. Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995) ("This court has presumed de novo review was conducted where the district court stated that it had made a full review of the files and records . . . ." (quotation omitted)).

1035, 1038 (8th Cir. 2002) (affirming attorneys' fee award of 36% in class action settlement); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) ("[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions."). The district court's award represents one-third of the total settlement fund. Even under the objectors' approach, the award represents 38% of the net settlement fund, which is only 2% higher than the highest percentage we have approved previously. Although 38% is on the high end of the typical range, we cannot say that it is unreasonable when compared to other awards within this circuit.[3] Thus, even when viewed as a percentage of the net settlement fund, the court's award was not unreasonable.

Third, the district court verified the reasonableness of its award by cross-checking it against the lodestar method. *See Petrovic*, 200 F.3d at 1157 ("[U]se of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the [benefit]' method."). The court determined that "an award of $8.5 million represents a lodestar multiplier of 1.82, which the Court finds reasonable in recognition of the protracted nature of the litigation." *Huyer*, 314 F.R.D. at 629. This multiplier is well within the range of multipliers awarded in this and other circuits. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 103, 123 (2d Cir. 2005) (finding multiplier of 3.5 appropriate in class action that was litigated for seven years); *Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6). Therefore, we find no error in the court's conclusion that the award was reasonable under the lodestar method.

---

[3]Although Deachin and Dunmore argue that we should establish a new 25% benchmark, they provide no compelling reason for us to depart from our settled practice of leaving decisions regarding attorneys' fees to the reasonable discretion of district courts, and we decline to do so.

Because the amount of attorneys' fees was not unreasonable, we conclude that the court did not abuse its discretion.

## III.

For the foregoing reasons, we affirm the district court's award of attorneys' fees.

_____